**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BISHOP DISPLAY TECH LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No. 2:26-cv-710** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **HKC CORPORATION LTD.; CHONGQING HKC OPTOELECTRONICS TECHNOLOGY CO., LTD.; HKC OVERSEAS LTD.; AND SHENZEN KOORUI TECHNOLOGY CO., LTD.,** | § § § § § § | |
| **Defendants.** | | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bishop Display Tech LLC ("Bishop" or "Plaintiff") files this Complaint against Defendants HKC Corporation Ltd. ("HKC Corp."), Chongqing HKC Optoelectronics Technology Co., Ltd. ("Chongqing HKC"), HKC Overseas Ltd. ("HKC Overseas"), and Shenzhen Koorui Technology Co., Ltd. ("Koorui") (collectively "HKC" or "Defendants") for infringement of U.S. Patent No. 6,525,798 (the "'798 patent"), U.S. Patent No. 6,787,829 (the "'829 patent"), U.S. Patent No. 6,801,293 (the "'293 patent"), U.S. Patent No. 6,816,208 (the "'208 patent"), U.S. Patent No. 6,850,303 (the "'303 patent"), and U.S. Patent No. 6,906,769 (the "'769 patent") (collectively, the "Asserted Patents").

## THE PARTIES

1. Plaintiff is a Texas limited liability company with its principal place of business in the Eastern District of Texas.

2. HKC Corp. On information and belief, HKC Corp. is corporation organized under the laws of China with a principal place of business at Factory Building 1, Floors 1–3 and 5–7, and Building 6, Floor 7, HKC Industrial Park, No. 1 Gongye 2nd Road, Shilong Community,

Shiyan Street, Bao'an District, Shenzhen, Guangdong Province, 518108, P.R. China. On information and belief, HKC Corp. makes, sells, offers to sell, distributes, and/or imports and has made, sold, offered to sell, distributed, and/or imported accused products (e.g., TFT-LCD displays and/or LCMS) for display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States. On information and belief, HKC Corp. wholly owns, directs, and controls and has wholly owned, directed, and controlled HKC Overseas and Koorui. On information and belief, HKC Corp. owns and has owned a majority interest in Chongqing HKC. On information and belief, HKC Corp. owns, directs, and controls and has owned, directed, and controlled Chongqing HKC.

3. On information and belief, HKC Corp. and/or its foreign or U.S.-based subsidiaries have a global supply chain for selling and importing display products, including TFT-LCDs/LCMs found in display products (e.g., phones, TVs, laptops, tablets, monitors), in the United States. As stated on HKC's website, "as a world-renowned integrated service provider of display solutions, HKC has four G8.6TFT-LCD high generation production lines and one G5.5 OLED Production Line with different technical characteristics." https://www.hkcglobal.net/semiconductor.html. "At present, [HKC] has realized the mass production of various application fields such as TV, monitor, pen, tablet computer, mobile phone, vehicle, industrial control, etc., and continues to expand new application fields such as electronic paper, medical, outdoor display." *Id*. And HKC further states, "[a]ccording to Sigmaintell data show that in 2023, the company's LCD TV panel shipments, display panel shipments, and smartphone panel shipments ranked third, fifth and third in the world respectively." *Id*. HKC additionally touts its "hundreds of billions of display panel industry chain" with TFT-LCD production lines in Chongqing, Chuzhou, Mianyang, and Changsha. *Id*. "HKC operates four strategically specialized G8.6 TFT-LCD production lines, enabling volume

production across all major display applications including televisions, monitors, laptops, tablets, smartphones, e-paper devices, automotive displays, industrial control panels, medical equipment, outdoor digital signage, video walls and interactive whiteboards." https://www.hkcglobal.net/about.html. "Through its multi-technology development approach, HKC maintains leadership in conventional a-Si TFT-LCD while achieving mass production of Oxide TFT-based monitor and notebook panels, developing next-gen OLED displays for Gen 8.6 applications, and innovating in Mini LED technology with commercially available COB products." *Id*. HKC "partner[s] with global technology leaders including … HP, Dell, Sony, Lenovo, Xiaomi, TPV, TCL, Haier, Hisense, and Vestel." *Id*. HKC further states, "[o]verseas, in the United States, the United Kingdom, South Korea, Japan, Singapore, the Netherlands, Indonesia, Ghana, Latvia and other countries and regions have industrial layout, products are sold to more than 100 countries around the world, its service system covers Europe, America, Asia, Africa and other major regions of the world." *Id*.

4. On information and belief, Innoview American Limited ("Innoview") is a California company with its principal place of business at 1510 N. White Ave., Suite A, La Verne, California 91750. Innoview's website, product literature, and product labels demonstrate that HKC sells for importation, imports, offers for sale, and/or sells after importation accused HKC TFT-LCDs and/or LCMs in the United States. On information and belief, Innoview is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls Innoview.

5. On information and belief, Koorui American Limited ("USA Koorui") is a New York company with its principal place of business at 90 State Street, Suite 700, Office 40, Albany, New York 12207. USA Koouri's website, product literature, and product labels demonstrate that

HKC sells for importation, imports, offers for sale, and/or sells after importation accused HKC TFT-LCDs and/or LCMs in the United States. On information and belief, USA Koorui is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls USA Koorui.

6. On information and belief, HKC Corp., Innoview, USA Koorui, HKC Overseas, and the other named Defendants, and/or their respective subsidiaries, affiliates, and related companies sells, offers to sell and/or imports and have sold, offered to sell, and/or imported accused HKC TFT-LCDs and/or LCMs in the United States. *See, e.g.*, https://www.designinnoview.com/products/; https://koorui.com/collections/all; https://www.hkcglobal.net/semiconductorinfo31.html; https://www.hkcelec.com/product/1.html.

7. Chongqing HKC. On information and belief, Chongqing HKC is a Chinese limited liability company formed under the laws of China with a principal place of business at No. 1 Shijing Road, Jieshi Town, Banan District, Chongqing, 401320, P.R. China. On information and belief, Chongqing HKC is a subsidiary HKC Corp., such that HKC Corp. owns a controlling interest of Chongqing HKC. On information and belief, HKC Corp. owns, directs, and controls Chongqing HKC. On information and belief, Chongqing HKC makes, sells, offers to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States.

8. HKC Overseas. On information and belief, HKC Overseas is a corporation organized under the laws of Hong Kong with a principal place of business at Unit 8, 28/F, W50, 50 Wong Chuk Hang Road, Wong Chuk Hang, Hong Kong. On information and belief, HKC Overseas is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls HKC Overseas. On information and belief, HKC Overseas makes, sells, offers

to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) for display devices (e.g., phones, TVs, laptops, tablets, monitors) destined for the United States. *See, e.g.*, https://www.hkcelec.com/product/1.html.

9. Koorui. On information and belief, Koorui is a company organized under the laws of the People's Republic of China having a regular and established place of business at 5th Floor, Factory Building 6, Huike Industrial Park, No. 1 Industrial 2nd Road, Shilong Community, Shiyan Street, Baoan District, Shenzhen, Guangdong, 518108, P.R. China. On information and belief, Koorui is a wholly owned subsidiary of HKC Corp. On information and belief, HKC Corp. owns, directs, and controls Koorui. On information and belief, Koorui makes, sells, offers to sell, distributes, and/or imports accused products (e.g., TFT-LCD displays and/or LCMS) and/or display devices (e.g., monitors) destined for the United States.

10. On information and belief, each of the named Defendants are part of an interrelated group of companies that together comprise one of the world's largest manufacturers and/or distributors of TFT-LCDs/LCMs; these entities are therefore collectively referred to herein as "HKC." For example, HKC refers to itself and its interrelated companies as the "HKC Group" or "the company." https://koorui.com/pages/about-us ("KOORUI is a new technology fashion brand under HKC Group, an industry giant in semiconductor display industry in China."); *id.* ("Depends on HKC group years of R&D, raw material, craftsmanship, high quality customer service, perfect supply chain management & cost optimization, KOORUI is capable of entering WW customer electronic market."); *id.* ("HKC Group HKC is an intelligent manufacturing and semiconductor technology R&D group, focusing on semiconductor display core components, intelligent IoT solutions, and vertical integration of the display industry chain.“); *id.* ("The company with the most vertically integrated domestic display industry chain.“);

https://www.hkcglobal.net/semiconductor.html ("According to Sigmaintell data show that in 2023, the company's LCD TV panel shipments, display panel shipments, and smartphone panel shipments ranked third, fifth and third in the world respectively.").

11. Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing their respective subsidiaries, affiliates, distributors, suppliers, business partners retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the following products accused of infringement (the "Accused Products"):

- HKC thin-film transistor liquid crystal displays ("TFT-LCDs") for display products;
- HKC liquid crystal modules comprising TFT-LCDs (collectively, "LCMs") for display products;
- Products comprising HKC TFT-LCDs or LCMs; and
- Components of the foregoing.

12. On information and belief, HKC Corp. wholly owns (or has majority ownership), directs, and controls and has wholly owned (or had majority ownership), directed, and controlled the other named Defendants, Innoview, USA Koorui, as well as many other subsidiaries and affiliates. On information and belief, HKC Corp., Chongqing HKC, HKC Overseas, Koorui, USA Koorui, and Innoview are, and have been, agents of HKC Corp. On information and belief, these companies share the same offices, leadership, employees, logos, and business. At the direction and control of HKC Corp., Chongqing HKC, HKC Overseas, Koorui, USA Koorui, and Innoview makes (and has made) and/or supplies (and has supplied) TFT-LCDs and LCMs that are (and have been) incorporated into end user products destined for the United States. As stated on HKC's

website, "Domestically, [HKC] has established production and research and development bases in Shenzhen, Chongqing, Jiezhou, Mianyang, Changsha, Hefei, Yichang, Beihai, Shanghai and other places." https://www.hkcglobal.net/about.html And HKC further states, "[o]verseas, in the United States, the United Kingdom, South Korea, Japan, Singapore, the Netherlands, Indonesia, Ghana, Latvia and other countries and regions have industrial layout, products are sold to more than 100 countries around the world, its service system covers Europe, America, Asia, Africa and other major regions of the world." *Id.*

13. On information and belief, each of the Defendants, USA Koorui, Innoview, and other HKC companies are, and have been, agents of HKC Corp. For example, each of the Defendants and their subsidiaries use the same logo and/or reference HKC, further emphasizing that these companies are alter egos and/or agents of one another. All HKC entities, including the named Defendants and each of their respective affiliates, parents, and subsidiaries, are related companies, affiliates, and have more than close relationships with one another.

14. On information and belief, Defendants, including along with other foreign and U.S.-based subsidiaries or agents (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Defendants) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Defendants conduct business in the United States, including importing, distributing, and selling the Accused Products that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district.

15. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products with distributors and customers operating in

and maintaining a significant business presence in the U.S., Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

16. Defendants operate (and have operated) in agency with its respective foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this District and the U.S. nationally. HKC and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and has directed) the Accused Products into established distribution channels within this District and the U.S. nationally.

17. On information and belief, HKC including its respective U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. HKC and its U.S. and foreign-based employees, agents, distributers, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in

concert with each other, and enter into agreements with each other that are nearer than arm's length.").

18. On information and belief, the Defendants share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and infringing product lines and products involving related technologies. On information and belief, Defendants operate (and have operated) as a single business entity and/or in concert with their respective affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Accused Products in the United States, including in the State of Texas generally and this District in particular.

19. On information and belief, Defendants and their U.S. and foreign subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

20. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Defendants are operating in (and have operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, Defendants have done (and do) business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

21. Plaintiff incorporates paragraphs 1 through 20 herein by reference.

22. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24. Venue is proper for Defendants in this District pursuant to 28 U.S.C. §§ 1391(c). Defendants are foreign entities and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

25. This Court has general and specific personal jurisdiction over the Defendants pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) the Defendants have done and continue to do business in Texas and/or (ii) the Defendants have, directly and through intermediaries, distributers, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by Internet sales and/or sales via business partners, retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and District (including, as relevant, in the past), including: (A) conducting at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

26. In addition, Defendants have subsidiaries and employees in the United States.

27. In addition, Defendants are aware that the Accused Products are imported to, shipped to, offered for sale, sold, and used in the United States given that they obtain UL Solutions certifications for the Accused Products so that they comply with the laws and regulations of the United States. For example, an Accused Product Koorui model no. 24N1 includes Accused Product HKC LCM/LCD model no. PN238CT02-14, which includes a UL Solutions mark indicating compliance with the laws and regulations of the United States:




On information and belief, Defendants imported, distributed, offered for sale, sold, and/or used Accused Product HKC LCM/LCD model no. PN238CT02-14 and all series of HKC LCM/LCD model no. PN238CT02-14 (e.g., PN238CT02-1, PN238CT02-2, etc.) and/or induced others to import, distributed, offer for sale, sell, and/or use Accused Product HKC model no. PN238CT02-14 and all series of HKC LCM/LCD model no. PN238CT02-14 in the United States at least by early 2020. On information and belief, the accused series of HKC LCM/LCD model no. PN238CT02 (e.g., PN238CT02-1, PN238CT02-2, etc.) have been incorporated into display products (e.g., Acer Aspire C24 series, Dell Inspiron and OptiPlex series, Koorui monitors, Phillips monitors, and/or AOC monitors) that have been made, offered for sale, sold, used, tested, and/or imported in the United States since at least early 2020. Also, given the long history of HKC as one of the main suppliers of display components incorporated in third party end user electronic devices,

HKC has knowledge that it and third party customers have substantial operations in the United States, as well as substantial market share in the United States market for LCD displays; Defendants are well-aware that the Accused Products are destined for the United States and Texas (e.g., via the such entities' supply chains, distributers, retailers, etc.). Indeed, the U.S. market for the Accused Products is substantial:




28. This Court has personal jurisdiction over each of the Defendants, directly or through agents, intermediaries, distributors, importers, business partners, customers, subsidiaries, and/or consumers. Through direction and control (including, as relevant, in the past) of such subsidiaries, affiliates, business partners, distributors, retail partners, agents, and/or customers, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over each of the Defendants would not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendants compensate their U.S.-based subsidiaries and/or agents for their sales and/or technical support services in the United States. As such, Defendants have a direct financial interest in their U.S.-based subsidiaries and/or agents, and/or partners, distributers, or customers, and vice versa.

29. Personal jurisdiction is proper because each of the Defendants has committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, inter alia, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

30. Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiff who resides in this District.

31. In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

32. For example, the websites of Defendants and their U.S.-based subsidiaries advertise the type of components and Accused Products that are infringing in this case. *See, e.g.*, https://www.designinnoview.com/products/; https://koorui.com/collections/all; https://www.hkcglobal.net/semiconductorinfo31.html; https://www.hkcelec.com/product/1.html.

33. Personal jurisdiction also exists specifically over Defendants because Defendants, directly or through affiliates, subsidiaries, business partners, agents, and/or intermediaries, transact business (or have transacted business) in this State or purposefully directed business at this State by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

34. To the extent Defendants are not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over Defendants in this State and this District would be consistent with due process and this State's long-arm statute and under national contacts in light of the facts alleged in this Complaint.

35. In addition, Defendants, directly or through affiliates, subsidiaries, agents, and/or intermediaries, have placed infringing products into the stream of commerce knowing they would be sold and used in Texas, and economically benefit from the retail sale of infringing products in this State, including in this District.

36. Defendants have advertised its infringing products to customers in Texas and this District through its website.

37. On information and belief, Defendants control (or have controlled) or otherwise direct (or directed) and authorizes (or authorized) all activities of their respective U.S.-based (or foreign-based with the knowledge that the Accused Products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Defendants researched, designed, developed, and manufactured the Accused Products, and then directed their respective U.S.-based (and/or foreign-based) sales subsidiaries, distributers, business partners agents, and/or others to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui*

*Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, Defendants conducted infringing activities, and Defendants' U.S.-based (and foreign-based) sales subsidiaries and/or distributers and/or agents and/or business partners conducted infringing activities on behalf of Defendants.

38. On information and belief, Defendants' U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Defendants substantially the same business advantages that it would have enjoyed if Defendants conducted their business through its own offices or paid agents. Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or distributers and/or agents were authorized to import, distribute, sell, and offer for sale Defendants' products, including the Accused Products, as well as their components and processes related to the same, on behalf of Defendants. For example, Defendants' U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Defendants' global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

39. Via Defendants' alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas including within this District. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the

buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute an offer to sell under § 271(a)).

40. On information and belief, Defendants have placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Defendants have, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

41. The minimum contacts test is satisfied because Defendants deliver products (e.g., TFT-LCDs and/or LCMs) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)). For example, and on information and belief (and as provided for herein), Defendants import, and/or have imported and/or shipped infringing Accused Products into the United States through and with their respective U.S. subsidiaries and/or affiliates and/or agents and/or supply chain partners and/or customers. Defendants supply their Accused Products (e.g., TFT-LCDs and/or LCMs) to their customers, subsidiaries, affiliates, agents, and/or distributors knowing that HKC TFT-LCDs and/or

LCMS will be incorporated into accused downstream display products (e.g., laptops, phones, tablets) that are offered for sale, sold, imported, and/or used by Defendants, their subsidiaries and interrelated companies, their customers, Best Buy, Walmart, and/or Amazon in the United States and this District. The Accused Products were (and are) directed to this District and were (and are) available for purchase in this District via retailers, such as Best Buy, Walmart, and Amazon. The lengthy and complex distribution chain does not insulate Defendants from suit in Texas.

42. Defendants intentionally placed and place HKC TFT-LCDs and/or LCMs in third party display products (e.g., Hisense TVs, TCL TVs, Vizio TVs, Acer laptops. Dell laptops, Phillips monitors, AOC monitors etc.) as well as HKC, Koorui, and Innoview display products in a distribution chain flowing from Asia to the United States, Texas, and this District. For example, Defendants intentionally place the HKC TFT-LCDs and/or LCMs and/or display products in a distribution or supply chain knowing that such Accused Products ultimately arrive in the United States market and this District through, at least, its direct and/or indirect customers' display devices (e.g., l phones, TVs, laptops, tablets, monitors, etc.). Defendants, through their sales of HKC TFT-LCDs and/or LCMs for application in downstream display devices, such as phones, TVs, laptops, tablets, and/or monitors, knew (or should have reasonably known) the likely destination of the products, where Defendants' conduct and connections with Texas and this District were such that each of the Defendants should have reasonably anticipated being brought to court in this District. Indeed, HKC's TFT-LCDs and or LCMs and the respective downstream display devices typically include a UL Solutions mark indicating compliance with the laws and regulations of the United States further evidencing that Defendants knew or should have known that its products were destined for the United States and this District.

43. Moreover, Defendants are the assignee of a substantial number of United States patents and patent applications, including use of U.S. patent counsel to procure such patents in their name. Thus, Defendants sought out the United States market, evidenced by seeking patent protection in the United States.

44. Also by way of example, and on information and belief, Defendants have (and have had) U.S. based (and/or foreign-based) employees that work in connection with the Accused Products.

45. HKC has and had a commercial relationship with significant players in the electronic display industry (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon), and HKC accessed the Texas consumer-electronics market vis-à-vis those relationships. Given HKC's relationship with such entities, which are behemoths for display products in the United States market, jurisdiction in this Court is fair and reasonable. Thus, jurisdiction in this Court is fair and reasonable for HKC.

46. In the alternative, the Court has personal jurisdiction over each of the Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, each of the Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over each of the Defendants is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given each of the Defendants' purposeful availment from the sales of HKC's TFT-LCDs and/or LCMs sold in the Unites States and this District in addition to third party display products (e.g., phones, TVs, laptops, tablets, monitors) incorporating HKC's TFT-LCDs and/or LCMs sold in the Unites States and this District.

**COUNT I**
**(Infringement of U.S. Patent No. 6,525,798)**

47. Plaintiff incorporates paragraphs 1 through 46 herein by reference.

48. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

49. Plaintiff is the owner of the ’798 patent with all substantial rights to the ’798 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

50. The ’798 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

51. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the ’798 patent in this District and elsewhere in Texas and the United States.

52. Defendants, collectively and/or individually, directly infringed the ’798 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’798 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’798 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’798 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and

belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '798 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '798 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '798 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

53. Furthermore, HKC Corp. directly infringed the ’798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

54. Furthermore, Chongqing HKC directly infringed the ’798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

55. Additionally, HKC Overseas directly infringed the ’798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

56. Additionally, Koorui directly infringed the ’798 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’798 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Koorui has (and

has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

57. For example, Defendants infringed claim 1 of the ’798 patent. The products accused of infringing the ’798 patent comprise a liquid crystal display unit. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[1], such that each comprises a liquid crystal display unit:







58. The products accused of infringing the ’798 patent comprise a plurality of pixels each including a plurality of common electrodes, a plurality of pixel electrodes, and a semiconductor switching element. The products accused of infringing the ’798 patent also

[1] On information and belief, HKC PN238CT02-14 includes the same relevant structure and functionality as the entire series of HKC LCM/LCMD model no. PN238CT02 (e.g., PN238CT02-1, PN238CT02-2, PN238CT02-3, etc.) that have been made, offered for sale, sold, used, tested, and/or imported and/or included in other display products made, offered for sale, sold, used, tested, and/or imported in the United States since at least early 2020.

comprise an array substrate having the pixels, a plurality of scanning signal lines, and a plurality of video signal lines for outputting signals to the pixel electrodes arranged on the surface thereof. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:






59. The products accused of infringing the ’798 patent comprise a counter substrate arranged opposite the array substrate, and a liquid crystal layer sandwiched between the array substrate and the counter substrate. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




60. Each of the pixels in the products accused of infringing the ’798 patent includes a plurality of electrode pairs, each electrode pair comprising one of the common electrodes and an adjacent one of the pixel electrodes, and at least one of the electrode pairs differs from other electrode pairs in a thickness of its common electrode or a thickness of its pixel electrode. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




61. At a minimum, each of the Defendants has known about the ’798 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’798 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC’s infringement of the ’798 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the “Company”) of the Company’s infringing activity of the ’798 patent via the Company’s making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the ’798 patent and other patents in its portfolio to abate the Company’s infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and

closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the ’798 patent from at least the foregoing dates that HKC Overseas was on notice of the ’798 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[2]

62. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants’ competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court,

---

[2] *See e.g., Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00495-JRG-RSP, 2025 U.S. Dist. LEXIS 206502, at *28-30 (E.D. Tex. Oct. 3, 2025) (“where there is a close relationship between a non-defendant third party and a defendant, giving notice to the former can constitute notice to the latter, at least insofar as it creates a genuine dispute of material fact. … we are satisfied that SDC’s relationship with the named Defendants here suffices, such that whether Plaintiff's notice to the former constitutes notice to Defendants is an issue that the trier of fact will resolve.”); *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan of N. Am.*, No. 11-11039, 2012 U.S. Dist. LEXIS 117941, at *14 (E.D. Mich. Aug. 21, 2012) (“Defendants argue the sheer implausibility of an automotive supplier informing its customers that it is supplying infringing products to them. Without a fully developed factual record however, the court cannot conclude that it is unreasonable to infer that defendants Toyota and Nissan received pre-suit knowledge of the patents-in-suit from their suppliers. A reasonable inference can be made that a supplier of an accused infringing instrumentality, with direct notice of the patents-in-suit, discussed said patents and the likelihood of infringement of these patents with its customers. It is also a reasonable inference that a Japanese parent company, Honda Motor Company, which received NISTAC's letter concerning the patents-in-suit, would communicate with its United States subsidiary, American Honda, about these patents and potential infringement thereof.”).

Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

63. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’798 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’798 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S.

https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

64. On information and belief, despite having knowledge of the '798 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '798 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '798 patent. On information and belief, Defendants instructed and encouraged the importers or

customers to import and/or sell products accused of infringing the ’798 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’798 patent in the United States.

65. Defendants’ infringement of the ’798 patent has been willful and with full knowledge of the ’798 patent. Upon information and belief, despite having knowledge of the ’798 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’798 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’798 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

66. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants’ infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

67. On information and belief, the prior patent owners of the ’798 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or

applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '798 patent.

**COUNT II**
**(Infringement of U.S. Patent No. 6,787,829)**

68. Plaintiff incorporates paragraphs 1 through 67 herein by reference.

69. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

70. Plaintiff is the owner of the '829 patent with all substantial rights to the '829 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

71. The '829 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

72. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '829 patent in this District and elsewhere in Texas and the United States.

73. Defendants, collectively and/or individually, directly infringed the '829 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '829 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '829 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '829 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously

liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '829 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '829 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control

its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

74. Furthermore, HKC Corp. directly infringed the ’829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

75. Furthermore, Chongqing HKC directly infringed the ’829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to

control those entities' infringing acts and receives a direct financial benefit from their infringement.

76. Additionally, HKC Overseas directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

77. Additionally, Koorui directly infringed the '829 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '829 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

78. For example, Defendants infringed claim 1 of the '829 patent. The products accused of infringing the '829 patent comprise a liquid crystal display panel. For example, Koorui's monitor model no. 24N1 includes HKC's LCM/LCD model no. PN238CT02-14[3], such that each comprises a liquid crystal display panel:




79. The products accused of infringing the '829 patent comprise an array substrate, a counter substrate opposing the array substrate, and a liquid crystal layer sandwiched between a

[3] *See* FN 1, *supra.*

surface of the array substrate and a surface of the counter substrate. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




80. The products accused of infringing the '829 patent comprise a plurality of image signal lines located over the surface of the array substrate that is in contact with the liquid crystal layer, the image signal lines being aligned in a same direction. The products accused of infringing the '829 patent comprise a plurality of scanning signal lines located over the surface of the array substrate over which the image signal lines are located, the scanning signal lines being located perpendicular to the image signal lines. As shown above, the array substrate is in contact with the liquid crystal layer. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




81. The products accused of infringing the ’829 patent comprise a line-shaped pixel electrode located in each of pixel regions of the array substrate that is surrounded by the image signal lines and the scanning signal lines, the pixel electrode located parallel to the image signal lines. The products accused of infringing the ’829 patent also comprise a common electrode located in each of the pixel regions and located parallel to the pixel electrode. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




82. The products accused of infringing the ’829 patent comprise a switching element for electrically connecting the pixel electrode and one of the image signal lines in response to a signal received from the scanning signal lines. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:



83. The products accused of infringing the ’829 patent are configured such that of the pixel electrode and the common electrode, the electrode that is located adjacent to and parallel to one of the image signal lines or one of the scanning signal lines comprises an opaque conductor, and at least one of the other electrodes comprises a transparent conductor. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:







84. At a minimum, each of the Defendants has known about the ’829 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside

IP LLC ("Parkside") was the patent owner of the '829 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent an email, including an attached letter, (collectively, the "HKC Notice Letter") to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC's infringement of the '829 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the "Company") of the Company's infringing activity of the '829 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '829 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '829 patent from at least the foregoing dates that HKC Overseas was on notice of the '829 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[4]

85. On information and belief, Defendants' conduct before the United States Patent and Trademark Office and/or foreign patent offices, suggest that it was aware of the '829 patent and their infringement prior to receiving the HKC Notice Letter. For example, in prosecuting U.S. Patent Publication No. 20200124924, HKC Corp. has known of the '829 patent. On information and belief, HKC Corp. is an agent, alter ego, and closely related to each of the other named

[4] *See* FN 2, *supra.*

Defendants and has more than a close relationship with each of the other named Defendants by owning and controlling other Defendants. Based on information and belief, each of the other named Defendants were on notice of the ’829 patent from at least the foregoing dates that HKC Corp. was on notice of the ’829 patent as a result of HKC Corp. receiving notice and/or Defendants receiving notice from HKC Corp.[5] On information and belief, Defendants actively monitored and/or analyzed the claims and their infringement of LCD patents, especially LCD patents originally owned by a competitor and/or company within the same or similar technological space. On information and belief, each of the Defendants were aware of their infringement of the ’829 patent.

86. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants’ competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

[5] *See* FN 2, *supra.*

87. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’829 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’829 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that

have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

88. On information and belief, despite having knowledge of the '829 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '829 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '829 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '829 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants'

U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’829 patent in the United States.

89. Defendants’ infringement of the ’829 patent has been willful and with full knowledge of the ’829 patent. Upon information and belief, despite having knowledge of the ’829 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’829 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’829 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

90. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants’ infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

91. On information and belief, the prior patent owners of the ’829 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants’ infringements of the ’829 patent.

**COUNT III**
**(Infringement of U.S. Patent No. 6,801,293)**

92. Plaintiff incorporates paragraphs 1 through 91 herein by reference.

93. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

94. Plaintiff is the owner of the ’293 patent with all substantial rights to the ’293 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

95. The ’293 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a) and/or §271(g))**

96. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the ’293 patent in this District and elsewhere in Texas and the United States.

97. Defendants have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the ’293 patent in this District and elsewhere in Texas and the United States.

98. Defendants, collectively and/or individually, directly infringed the ’293 patent via 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’293 patent in the United States. For example, Defendants directly infringed the ’293 patent via 35 U.S.C. § 271(g) by having offered for sale, sold, imported, and/or used within the United States those Accused Products, their components and processes, and/or products containing the same that were made by the process of at least Claim 1 of the ’293 patent. For example, Defendants, either by themselves and/or via an agent and/or in concert, directly infringed the ’293 patent by offering for sale, selling, using, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of

the ’293 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Defendants sold and/or made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’293 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringed the ’293 patent through its direct involvement in the activities of its subsidiaries and related companies (e.g., any HKC company), including by selling and offering for sale the Accused Products directly to such subsidiaries and related companies and importing the Accused Products into the United States for such subsidiaries and related companies. Such subsidiaries conduct activities that constitute direct infringement of the ’293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, used, and/or imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, related companies, and/or consumers. Further, each of the Defendants is vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, Defendants, their respective subsidiaries and related companies are essentially the same company, and Defendants have the right and ability to control its subsidiaries and related companies’ infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

99. Furthermore, HKC Corp. directly infringed the ’293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and/or offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

100. Furthermore, Chongqing HKC directly infringed the ’293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and/or offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the

right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

101. Furthermore, HKC Overseas directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and/or offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Overseas has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

102. Furthermore, Koorui directly infringed the '293 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and/or offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the '293 patent under 35 U.S.C. § 271(a) and/or 35 U.S.C. § 271(g) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were)

essentially the same company, and/or agents of each other, and Koorui has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

103. The products made using the method of manufacturing accused of infringing at least claim 1 of the '293 patent comprise an in-plane electric field mode liquid crystal element having a pair of substrates. For example, HKC's LCM/LCD model no. PN238CT02-14[6] and/or Koorui's monitor model no. 24N1 comprising HKC's LCM/LCD model no. PN238CT02-14 were each made by a method for manufacturing an in-plane electric field mode liquid crystal element having a pair of substrates:




[6] *See* FN 1, *supra.*




104. At least one of the substrates on the products made using the method of manufacturing accused of infringing the ’293 patent includes pixel electrodes for generating an in-plane electric field, common electrodes, and an insulating film for insulating these electrodes from one another. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:







105. The products made using the method of manufacturing accused of infringing the ’293 patent include orientation films provided on the inner side of one or both of the substrates and a liquid crystal layer sandwiched between the substrates. For example, the orientation film is evidenced by the ability of the liquid crystal molecules to align. Further, applying a UV light to a

polymer-based orientation film will cause the film to glow. An examination of the array substrate of HKC's LCM/LCD model no. PN238CT02-14 demonstrates the presence of an orientation film that glows under UV light:







106. The products made using the method of manufacturing accused of infringing the '293 patent were made via a stripping step of stripping, by rubbing, a predetermined portion of the

orientation film on the electrodes or lines once formed on the inner side of one or both of the substrates. On information and belief, the orientation film is stripped via rubbing the gate lines and/or common lines on the inner side of the array substrate. The particular details are within HKC's possession, custody, and control. *See Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 U.S. Dist. LEXIS 28100, at *18 (E.D. Tex. Mar. 18, 2011) ( "precisely how [Defendant's] products work… is clearly more accessible to [Defendant] than to Plaintiff … the mere fact that allegations begin with the statement 'on information and belief' will not automatically render them insufficient"); *Digitaldoors, Inc. v. Comerica Bank*, No. 2:23-cv-00541-JRG-RSP, 2024 U.S. Dist. LEXIS 177294, at *6-7 (E.D. Tex. Sep. 9, 2024) ("[Plaintiff] is expected to flesh out its understanding of the Accused Products during the duration of this case but, at the pleading stage, it is sufficient that [Plaintiff] pleaded enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged" patent infringement.").

107. In addition, Defendants have imported into the United States, offered to sell, sold or used within the United States infringing products, including those identified herein, that are manufactured by patented methods claimed in the '293 patent, including at least claim 1, as articulated herein. Such infringing manufacturing process has been performed during the term of the '293 patent, without a license to the Defendants for such infringement, and such accused and infringing products have not been materially changed by any subsequent process, nor have such accused and infringing products become a trivial and/or non-essential component of another product.

108. At a minimum, each of the Defendants has known about the '293 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC ("Parkside") was the patent owner of the '293 patent. Parkside authorized its licensing

agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent an email, including an attached letter, (collectively, the "HKC Notice Letter") to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC's infringement of the '293 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the "Company") of the Company's infringing activity of the '293 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '293 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '293 patent from at least the foregoing dates that HKC Overseas was on notice of the '293 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[7]

109. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-

---

[7] *See* FN 2, *supra.*

00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

110. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’293 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’293 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to

these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

111. On information and belief, despite having knowledge of the ’293 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the ’293 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the ’293 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’293 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’293 patent in the United States.

112. Defendants’ infringement of the ’293 patent has been willful and with full knowledge of the ’293 patent. Upon information and belief, despite having knowledge of the ’293 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’293 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’293 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

113. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

114. On information and belief, the prior patent owners of the '293 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '293 patent.

**COUNT IV**
**(Infringement of U.S. Patent No. 6,816,208)**

115. Plaintiff incorporates paragraphs 1 through 114 herein by reference.

116. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

117. Plaintiff is the owner of the '208 patent with all substantial rights to the '208 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

118. The '208 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

119. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '208 patent in this District and elsewhere in Texas and the United States.

120. Defendants, collectively and/or individually, directly infringed the '208 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '208 patent. For example, Defendants,

either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’208 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’208 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries’ infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’208 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the ’208 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’208 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered

for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

121. Furthermore, HKC Corp. directly infringed the ’208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

122. Furthermore, Chongqing HKC directly infringed the ’208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’208 patent under 35 U.S.C. § 271(a) by

making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities' infringing acts and receives a direct financial benefit from their infringement.

123. Additionally, HKC Overseas directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

124. Additionally, Koorui directly infringed the '208 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the

United States for such entities. Such entities conducted activities that constitute direct infringement of the ’208 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

125. For example, Defendants infringed claim 1 of the ’208 patent. The products accused of infringing the ’208 patent comprise a liquid crystal display device. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[8], such that each comprises an active matrix liquid crystal display device:

[8] *See* FN 1, *supra.*







126. The products accused of infringing the ’208 patent comprise a capacitive accumulation portion formed by overlapping a pixel electrode, an insulating layer and a common electrode for each pixel area, and a non-electrode area in a part of the pixel area, which is not covered with a pixel electrode. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:







127. On information and belief, the products accused of infringing the ’208 patent are configured such that a peripheral shape of said capacitive accumulation portion on a side contacting said non-electrode area is substantially the same between respective pixels, and a value of a storage capacity in said capacitive accumulation portion of one pixel at a signal feeding side is larger than that of an adjacent pixel at a termination side, wherein the value of the storage capacity in said capacitive accumulation portion of the one pixel is different from that of the

adjacent pixel by varying an aperture in the common electrode of the adjacent pixel with respect to the aperture of the one pixel. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:









128. At a minimum, each of the Defendants has known about the '208 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside

IP LLC ("Parkside") was the patent owner of the '208 patent. Parkside authorized its licensing agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent an email, including an attached letter, (collectively, the "HKC Notice Letter") to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC's infringement of the '208 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the "Company") of the Company's infringing activity of the '208 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '208 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '208 patent from at least the foregoing dates that HKC Overseas was on notice of the '208 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[9]

129. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products),

[9] *See* FN 2, *supra*.

including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

130. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’208 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’208 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused

Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least

willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

131. On information and belief, despite having knowledge of the '208 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '208 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '208 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the '208 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the '208 patent in the United States.

132. Defendants' infringement of the '208 patent has been willful and with full knowledge of the '208 patent. Upon information and belief, despite having knowledge of the '208 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the '208 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '208 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

133. Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

134. On information and belief, the prior patent owners of the '208 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '208 patent.

**COUNT V**
**(Infringement of U.S. Patent No. 6,850,303)**

135. Plaintiff incorporates paragraphs 1 through 134 herein by reference.

136. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

137. Plaintiff is the owner of the '303 patent with all substantial rights to the '303 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

138. The '303 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

139. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '303 patent in this District and elsewhere in Texas and the United States.

140. Defendants, collectively and/or individually, directly infringed the '303 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those

Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’303 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the ’303 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the ’303 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries’ infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’303 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the ’303 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct

infringement of the ’303 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

141. Furthermore, HKC Corp. directly infringed the ’303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

142. Furthermore, Chongqing HKC directly infringed the ’303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or

importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

143. Additionally, HKC Overseas directly infringed the ’303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

144. Additionally, Koorui directly infringed the ’303 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by

selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the ’303 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

145. For example, Defendants infringed claim 1 of the ’303 patent. The products accused of infringing the ’303 patent comprise a liquid crystal display device. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[10], such that each comprises a liquid crystal display device:

[10] *See* FN 1, *supra*.




146. The products accused of infringing the ’303 patent comprise an array substrate, an opposing substrate facing the array substrate, and liquid crystal held between the array substrate and the opposing substrate. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




147. The products accused of infringing the ’303 patent are configured such that the array substrate is provided with a plurality of gate wirings and a plurality of source wirings intersecting each other and a pixel electrode disposed in a region defined by two adjacent gate wirings and two adjacent source wirings. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:



148. The products accused of infringing the ’303 patent are configured such that the array substrate is provided with a switching element for switching a voltage applied to the pixel electrode from the source wiring based on a signal voltage fed from the gate wiring. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




149. The products accused of infringing the ’303 patent are configured such that the array substrate is provided with a common wiring formed between the two adjacent gate wirings. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




150. The products accused of infringing the ’303 patent are configured such that the array substrate is provided with a common electrode being electrically connected to the common wiring and generating an electric field between the common electrode and the pixel electrode creating a voltage for driving the liquid crystal. For example, an examination of HKC’s LCM/LCD model no. PN238CT02-14 demonstrates this:




151. The products accused of infringing the ’303 patent are configured such that the array substrate is provided with a storage capacity electrode electrically connected to the pixel

electrode. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




152. The products accused of infringing the '303 patent are configured such that the pixel electrode and the storage capacity electrode are layered so as to hold at least some part of the common wiring in between through an insulating layer. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:



153. At a minimum, each of the Defendants has known about the ’303 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’303 patent. Parkside authorized its licensing agent to provide Parkside’s notice of infringement of the asserted patents to alleged infringers. To this end, Parkside’s licensing agent sent an email, including an attached letter, (collectively, the “HKC Notice Letter”) to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC’s infringement of the ’303 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the “Company”) of the Company’s infringing activity of the ’303 patent via the Company’s making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the ’303 patent and other patents in its portfolio to abate the Company’s infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the ’303 patent from at least the foregoing dates that HKC Overseas was on notice of the ’303 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[11]

154. On information and belief, Defendants’ conduct before the United States Patent and Trademark Office and/or foreign patent offices, suggest that it was aware of the ’303 patent and their infringement prior to receiving the HKC Notice Letter. For example, in prosecuting U.S.

[11] *See* FN 2, *supra.*

Patent Publication No. 20200124924, HKC Corp. has known of the ’303 patent. On information and belief, HKC Corp. is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants by owning and controlling other Defendants. Based on information and belief, each of the other named Defendants were on notice of the ’303 patent from at least the foregoing dates that HKC Corp. was on notice of the ’303 patent as a result of HKC Corp. receiving notice and/or Defendants receiving notice from HKC Corp.[12] On information and belief, Defendants actively monitored and/or analyzed the claims and their infringement of LCD patents, especially LCD patents originally owned by a competitor and/or company within the same or similar technological space. On information and belief, each of the Defendants were aware of their infringement of the ’303 patent.

155. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants’ competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court,

[12] *See* FN 2, *supra*.

Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

156. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’303 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’303 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S.

https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

157. On information and belief, despite having knowledge of the '303 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the '303 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the '303 patent. On information and belief, Defendants instructed and encouraged the importers or

customers to import and/or sell products accused of infringing the ’303 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’303 patent in the United States.

158. Defendants’ infringement of the ’303 patent has been willful and with full knowledge of the ’303 patent. Upon information and belief, despite having knowledge of the ’303 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’303 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’303 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

159. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants’ infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

160. On information and belief, the prior patent owners of the ’303 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or

applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '303 patent.

**COUNT VI**
**(Infringement of U.S. Patent No. 6,906,769)**

161. Plaintiff incorporates paragraphs 1 through 160 herein by reference.

162. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

163. Plaintiff is the owner of the '769 patent with all substantial rights to the '769 patent including the exclusive right to enforce, sue, and recover damages for past infringement.

164. The '769 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**DIRECT INFRINGEMENT (35 U.S.C. §271(a))**

165. Defendants, collectively and/or individually, have infringed literally, and/or under the Doctrine of Equivalents, one or more claims of the '769 patent in this District and elsewhere in Texas and the United States.

166. Defendants, collectively and/or individually, directly infringed the '769 patent via 35 U.S.C. § 271(a) by having made, offered for sale, sold, used, tested, and/or imported those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '769 patent. For example, Defendants, either by themselves (individually and/or in concert) and/or via an agent, directly infringed the '769 patent by offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies and claims of the '769 patent, to and/or via its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Each Defendant is vicariously

liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, each of the Defendants and related companies are (and were) essentially the same company, and/or agents of each other, and each of the Defendants has the right and ability to control its indirect and direct subsidiaries' infringing acts and receives a direct financial benefit from the infringement of its subsidiaries and related companies. Furthermore, on information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to its customers, agents, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '769 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, each of the Defendants directly infringed the '769 patent through direct involvement in the activities of their respective subsidiaries, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of its U.S.-based subsidiaries (under both the alter ego and agency theories) because, as an example and on information and belief, HKC, its subsidiaries, and its related companies are essentially the same company, and HKC has the right and ability to control

its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based subsidiaries.

167. Furthermore, HKC Corp. directly infringed the ’769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, HKC Corp. is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and HKC Corp. has (and had) the right and ability to control those entities’ infringing acts and receives a direct financial benefit from their infringement.

168. Furthermore, Chongqing HKC directly infringed the ’769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates or agents, including by selling and offering for sale the Accused Products directly to such entities and/or importing the Accused Products into the United States for such entities. Such entities conducted activities that constituted direct infringement of the ’769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products. Further, Chongqing HKC is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and were) essentially the same company, and/or agents of each other, and Chongqing HKC has (and had) the right and ability to

control those entities' infringing acts and receives a direct financial benefit from their infringement.

169. Additionally, HKC Overseas directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, HKC Overseas is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information and belief, such entities are (and have been) essentially the same company, and HKC Overseas has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

170. Additionally, Koorui directly infringed the '769 patent through its direct involvement in the activities of its subsidiaries, related companies, and/or affiliates, including by selling (and having sold) and offering for sale (and having offered for sale) the Accused Products directly to such entities and/or importing (or having imported) the Accused Products into the United States for such entities. Such entities conducted activities that constitute direct infringement of the '769 patent under 35 U.S.C. § 271(a) by making, using, testing, offering for sale, selling, and/or importing those Accused Products during the relevant time period. Further, Koorui is vicariously liable for the infringing conduct of its subsidiaries, related companies, and/or affiliates or agents (under both the alter ego and agency theories) because, as an example and on information

and belief, such entities are (and have been) essentially the same company, and Koorui has (and has had) the right and ability to control their infringing acts and received a direct financial benefit from their infringement.

171. Defendants infringed claim 1 of the ’769 patent. The products accused of infringing the ’769 patent comprise a liquid crystal screen display. For example, Koorui’s monitor model no. 24N1 includes HKC’s LCM/LCD model no. PN238CT02-14[13], such that each comprises a liquid crystal screen display:




172. The products accused of infringing the ’769 patent comprise a first insulating substrate, a second insulating substrate facing the first insulating substrate, and a liquid crystal

[13] *See* FN 1, *supra.*

layer formed between the first and second insulating substrates. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




173. The products accused of infringing the '769 patent comprise alignment layers formed between the first insulating substrate and the liquid crystal layer and between the second insulating substrate and the liquid crystal layer, respectively, for aligning the liquid crystal layer. For example, an alignment layer, such as a polymer-based orientation film, between the first insulating substrate and the liquid crystal layer is evidenced by applying a UV light to the substrate. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:







174. The products accused of infringing the ’769 patent comprise alignment layers formed between the first insulating substrate and the liquid crystal layer and between the second

insulating substrate and the liquid crystal layer, respectively, for aligning the liquid crystal layer. For example, an alignment layer, such as a polymer-based orientation film, between the second insulating substrate and the liquid crystal layer is necessary for the liquid crystal molecules in the Accused Products to align. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:




175. The products accused of infringing the '769 patent comprise a first conductive member which is formed on the first insulating substrate and interposed between the first insulating substrate and its corresponding alignment layer, being in partial contact with the alignment layer and to which a negative voltage is applied, the first conductive member being gate signal lines. For example, in the products accused of infringing the '769 patent gate lines are between the first insulating substrate and the corresponding alignment layer. Negative voltages are applied to the gate lines to operate the thin film transistors, as can be seen below in an exemplary LCD schematic. For example, an examination of HKC's LCM/LCD model no. PN238CT02-14 demonstrates this:







176. At a minimum, each of the Defendants has known about the ’769 patent since at least July 29, 2020, when HKC received notice of their infringement. On July 29, 2020, Parkside IP LLC (“Parkside”) was the patent owner of the ’769 patent. Parkside authorized its licensing

agent to provide Parkside's notice of infringement of the asserted patents to alleged infringers. To this end, Parkside's licensing agent sent an email, including an attached letter, (collectively, the "HKC Notice Letter") to HKC and HKC Overseas on July 29, 2020 providing notice from Parkside of HKC's infringement of the '769 patent. The HKC Notice Letter informed HKC Overseas together with its affiliates and subsidiaries (collectively the "Company") of the Company's infringing activity of the '769 patent via the Company's making, using, offering to sell, selling and/or importing LCD displays, such as PT320CT01-1 (an HKC TFT-LCD), and/or devices that include LCD displays. Furthermore, the HKC Notice Letter stated that Parkside sought to license the '769 patent and other patents in its portfolio to abate the Company's infringement. The HKC Notice Letter was addressed to Yaoren (Andrew) Xu, General Manager for HKC Overseas, at andrew@hkcelec.com. On information and belief, HKC Overseas is an agent, alter ego, and closely related to each of the other named Defendants and has more than a close relationship with each of the other named Defendants. Based on information and belief, each of the other named Defendants and their affiliates and subsidiaries were on notice of the '769 patent from at least the foregoing dates that HKC Overseas was on notice of the '769 patent as a result of HKC Overseas receiving notice and/or receiving notice from HKC Overseas.[14]

177. Further, on information and belief, Defendants monitor and/or have knowledge of U.S. patent litigation related to its competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products) and are, accordingly, on notice of the Asserted Patents given the prior Bishop Display lawsuits related to Defendants' competitors and/or companies within the same or similar technological space (here, e.g., the Accused LCD products), including: *Bishop Display Tech LLC v. Samsung Electronics Co., Ltd., et al*, Case Nos. 21-cv-

[14] *See* FN 2, *supra.*

00136, 21-cv-00139, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. Innolux Corporation*, Case Nos. 22-cv-00384, 22-cv-00385, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. LG Electronics, Inc., et al*, Case Nos. 24-cv-00084, 24-cv-00085, Federal District Court, Eastern District of Texas; *Bishop Display Tech LLC v. BOE Technology Group Cp., LTD.*, Case Nos. 25-cv-00309, 25-cv-00310, Federal District Court, Eastern District of Texas, *Bishop Display Tech LLC v. TCL Electronics Holdings Ltd., et al*, Case Nos. 26-cv-00256, 26-cv-00257, Federal District Court, Eastern District of Texas.

**INDIRECT INFRINGEMENT (35 U.S.C. §271(b))**

178. On information and belief, since at least the above-mentioned dates when Defendants were on notice of its infringement, Defendants actively induced, under U.S.C. § 271(b), distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers to directly infringe one or more claims of the ’769 patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned dates, Defendants did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’769 patent. Defendants have caused and/or intended to cause, and took affirmative steps to induce infringement by distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to infringing features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to

these purchasers in the United States. As just one example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with FCC and/or UL Solutions labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. In another example, Defendants actively induced distributors, retailers, customers, subsidiaries, importers, testing outfits, and/or consumers that have purchased, imported, used, offered for sale, and/or sold to include the accused Defendants' TFT-LCDs and/or LCMs that already comply with U.S. laws and regulations via UL Solutions in accused end products (e.g., phones, TVs, laptops, tablets, monitors) because it allows for such entities to streamline the UL Solutions certification process for such end products if the Defendants' TFT-LCD and/or LCMs have already been certified by UL Solutions. https://marks.ul.com/about/ul-listing-and-classification-marks/appearance-and-significance/marks-for-north-america/. Each of Defendants specifically designs, develops, manufactures, sells, supplies its accused TFT-LCDs and/or LCMs for application in other display products (e.g., phones, TVs, laptops, tablets, monitors), including by obtaining UL Solutions certificates for compliance with U.S. laws and regulations, where Defendants induce its customers (e.g., HP, Dell, Sony, Lenovo, TCL, Hisense, Vizio, Amazon) to offer for sale, sell, import, and/or use the accused display products incorporating Defendants' infringing TFT-LCDs/LCMs in the United States and this District. Defendants undertakes these activities with knowledge or at least willful blindness to the significant sales of the accused products including Defendants' TFT-LCDs/LCMs in the United States and in this District.

179. On information and belief, despite having knowledge of the ’769 patent and its infringement, Defendants specifically intended for others to import and sell products accused of infringing the ’769 patent. For example, Defendants specifically intended for its U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the ’769 patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’769 patent. On information and belief, the purchase and sale agreements between Defendants and the importers or customers provide such instruction and/or encouragement. Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for inter alia, the purpose of importing and selling products accused of infringing the ’769 patent in the United States.

180. Defendants’ infringement of the ’769 patent has been willful and with full knowledge of the ’769 patent. Upon information and belief, despite having knowledge of the ’769 patent and knowledge that it was directly and/or indirectly infringing one or more claims of the ’769 patent, Defendants nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendants’ infringing activities relative to the ’769 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

181. Plaintiff has been damaged as a result of Defendants’ infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

182. On information and belief, the prior patent owners of the '769 patent have complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Furthermore, Plaintiff has complied with the requirements of 35 U.S.C. § 287, to the extent necessary and/or applicable. Thus, Plaintiff is entitled to collect pre- and post-filing damages for Defendants' infringements of the '769 patent.

## CONCLUSION

183. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of the Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

184. Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

1. A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;
3. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;
4. A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;
5. A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and
6. Such other and further relief as the Court deems just and equitable.

Dated: August 18, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Justin Kimble
Texas Bar No. 24036909
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
**Nelson Bumgardner Conroy PC**
2727 North Harwood Street
Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
justin@nelbum.com
bill@nelbum.com
jon@nelbum.com

John P. Murphy
Texas Bar No. 24056024
**Nelson Bumgardner Conroy PC**
3131 W 7th St
Suite 300
Fort Worth, TX 76107
Tel: (817) 806-3808
murphy@nelbum.com

Attorneys for Plaintiff
**BISHOP DISPLAY TECH LLC**